UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE ROCKET FUEL INC.

DERIVATIVE LITIGATION

Case No.  15-cv-04625-PJH

**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND**

Re: Dkt. No. 64, 65

Nominal defendant Rocket Fuel's motion to dismiss plaintiffs' complaint came on for hearing before this court on August 24, 2016.  Plaintiffs appeared through their counsel, Thomas J. McKenna.  Rocket Fuel Inc. ("Rocket Fuel") appeared through its counsel, Nina Locker and Evan Seite.  Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion to dismiss for the following reasons, as well as the reasons stated on the record at the hearing.

**BACKGROUND**

A.    **The Verified Consolidated Shareholder Derivative Complaint**

This is a consolidated derivative shareholder lawsuit against a number of officers and directors of nominal defendant Rocket Fuel.  See Verified Consolidated Shareholder Derivative Complaint ("VSC"), Dkt. 60.  Rocket Fuel offers technological solutions to find, sell, and optimize digital advertising, using an automated ad-buying platform.  VSC ¶¶ 2, 18.  At issue in this case are Rocket Fuel's efforts to combat "digital ad fraud"—in particular, when ads are viewed by computer programs, such as "bots."  VSC ¶¶ 3–6, 40–43.  The presence of bots can skew the number of views that an ad receives, so that advertisers are paying for views (or "impressions") that are not made by real people, but only being "seen" by bots.  Id.  Aspects of Rocket Fuel's technology are designed to filter out and prevent bot views.

United States District Court
Northern District of California

Plaintiffs allege that Rocket Fuel's directors and officers made false and misleading statements (and omissions) regarding the technology's effectiveness at combatting ad fraud, which artificially inflated its stock price.  VSC ¶¶ 7–8.  Plaintiffs allege that despite knowing of the extent of the bot problem, defendants continued to tout their technology's capabilities, until ultimately being forced to announce poor earnings performances and to admit that customers were taking their business elsewhere because of the bot problem.  VSC ¶¶ 7–9.  These announcements caused Rocket Fuel's stock price to drop.

The amended VSC is brought on behalf of four individual shareholders of Rocket Fuel:  Victor Veloso, Hugues Gervat, William Pack, and Michael McCawley (collectively, "plaintiffs").  VSC ¶¶ 14–17.  Their claims are asserted against:

- Eight "**Director Defendants**": George H. John, Richard Frankel, Susan Bostrom, Ronald E.F. Codd, William Ericson, John Gardner, Clark Kokish, and Monte Zweben, who all serve or once served on Rocket Fuel's Board of Directors.  VSC ¶¶ 19–26.

- Three "**Officer Defendants**": Abhinav Gupta, J. Peter Bardwick, and Randy Wooten.  VSC ¶ 27-29.  (In November 2015, after this suit was filed, Wooten replaced John as CEO and Chairman of Broad.  VSC ¶ 29.)

- Of these eleven "**Individual Defendants**," the VSC refers to seven—John, Frankel, Ericson, Gardner, Zweben, Gupta, and Bardwick—as the "**Insider Selling Defendants**."  VSC ¶ 33.

- The eight defendants who sat on the Board of Directors at the time this action was commenced—John, Frankel, Bostrom, Codd, Ericson, Gardner, Kokish, and Zweben—are referred to as the "**Demand Defendants**."  VSC ¶ 30.

Plaintiffs assert five causes of action, the first three of which—breach of fiduciary duties, unjust enrichment, and corporate waste—are made against all eleven Individual Defendants.  VSC ¶¶ 187–204.  The VSC's other two claims are asserted only against the seven Insider Selling Defendants.  Both of these claims allege that the defendants sold stock during the secondary public offering while in possession of material non-public information about the true effectiveness of Rocket Fuel's technology.  VSC ¶¶ 205–217.

///

2

**B.      Procedural History and the Court's December 23, 2015 Order**

The original complaint in this case was filed on October 26, 2015.  Dkt. 1.  The case was reassigned to this court as related to In re Rocket Fuel Inc. Securities Litigation, No. 14-cv-03998-PJH (the "Securities Action").  Dkt. 33.  This derivative action was stayed during the pendency of a motion to dismiss in the Securities Action, which is based upon many of the same allegedly misleading statements.  Dkt. 35.

On December 23, 2015, this court granted in part defendants' motion to dismiss in the Securities Action.  See In re Rocket Fuel Inc. Sec. Litig., No. 14-cv-03998-PJH, Dkt. 130 (the "December 23 Order").  The court found that none of the statements in Rocket Fuel's IPO materials or secondary offering materials were misleading.  See id. at 9, 12. Accordingly, all of the Securities Act claims were dismissed.  Id. at 16.  However, the court found that a November 6, 2013 blog post contained statements that were potentially actionable, and allowed the Exchange Act claims to proceed against Rocket Fuel, John, Frankel, and Bardwick, only with respect to those statements.  Id. at 16, 19.  The specific statements made on Rocket Fuel's website were that (1) Rocket Fuel is "able to identify and eliminate all threats before serving a single ad"; and (2) Rocket Fuel's technology "undermines fraudulent practices and makes sure con artists always leave empty-handed."  Id. at 11.

Following resolution of the motion to dismiss in the Securities Action, the court consolidated this case with a number of related derivative actions against Rocket Fuel directors and appointed lead counsel.  Dkt. 57.  On April 14, plaintiffs filed the operative amended verified shareholder derivative complaint.  Dkt. 60.

Rocket Fuel now brings a motion to dismiss the complaint, arguing that plaintiffs have failed to comply with the particularized pleading requirements of Federal Rule of Civil Procedure 23.1.  Dkt. 64.  In particular, Rocket Fuel argues that the VSC lacks particularized allegations establishing that: (1) the plaintiffs owned shares in Rocket Fuel at the time of the disputed transactions; and (2) a pre-litigation demand on Rocket Fuel's Board of Directors would have been futile.

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISCUSSION**

**A.     Legal Standard**

A shareholder does not have standing to sue in an individual capacity for injury to the corporation.  William Meade Fletcher, et al., 13 Fletcher Cyclopedia of the Law of Private Corporations, § 5939 (2008).  Such an action must be brought as a derivative action – "an equitable remedy in which a shareholder asserts on behalf of a corporation a claim not belonging to the shareholder, but to the corporation."  Id.  Once the action – if filed in federal court – has been characterized as derivative, the applicable procedural rules are determined by federal law.  Sax v. World Wide Press, Inc., 809 F.2d 610, 613 (9th Cir. 1987).

Federal Rule of Civil Procedure 23.1 permits a plaintiff to bring a shareholder derivative suit only if two requirements are met.  Potter v. Hughes, 546 F.3d 1051, 1056 (9th Cir. 2008).  First, the plaintiff must have owned shares in the corporation at the time of the disputed transaction.  See Fed. R. Civ. P. 23.1(b)(1).  Second, the plaintiff must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  The failure to meet the demand requirement may be excused if the particularized facts show that demand would have been futile.  See In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 989–90 (9th Cir. 1999), abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 784 (9th Cir. 2008).

In determining whether the demand requirement is met, federal courts rely upon the state law that governs the affairs of the corporation.  Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101–02 (1991).  Because Rocket Fuel is a Delaware corporation, Delaware law governs the issue of whether plaintiffs' failure to make a pre-suit demand on the Board is excused as futile.  Rosenbloom v. Pyott, 765 F.3d 1137, 1148 (9th Cir. 2014).

///

4

United States District Court
Northern District of California

1     Delaware law provides two demand-futility tests, as set forth in Aronson v. Lewis,

2  473 A.2d 805 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244

3  (Del. 2000), and Rales v. Blasband, 634 A.2d 927 (Del. 1993).  The Rales test and the

4  first prong of the Aronson test are the same – the court looks at whether the plaintiff has

5  established, by means of particularized factual allegations, that a majority of the board is

6  interested or is lacking in independence.  Aronson, 473 A.2d at 814; Rales, 634 A.2d at

7  934.  The second prong of the Aronson test requires the plaintiffs to establish that a

8  challenged board action was not the product of a valid exercise of business judgment.

9  Aronson, 473 A.2d at 814.  This second prong is applied only where the plaintiff is

10  challenging a particular board decision.

11     When the plaintiffs do not challenge a specific business decision by the board,

12  courts employ the Rales test.  As the Rales court explained, demand will only be excused

13  when "the directors are incapable of making an impartial decision regarding such

14  litigation."  634 A.2d at 932.  The Rales test requires the court to determine:

> whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.

19  Rales, 634 A.2d at 934.

20     Demand futility is analyzed based on the composition of the board at the time the

21  lawsuit is initiated, as that is the board upon which demand would have been made.  See

22  Harris v. Carter, 582 A.2d 222, 228 (Del. Ch. 1990); see also Braddock v. Zimmerman,

23  906 A.2d 776, 786 (Del. 2006).  "Directors who are sued have a disabling interest for pre-

24  suit demand purposes when 'the potential for liability is not a mere threat but instead may

25  rise to a substantial likelihood.'"  Ryan v. Gifford, 918 A.2d 341, 355 (Del. Ch. 2007)

26  (citation omitted).

27  ///

28  ///

5

**B.      Rocket Fuel's Request for Judicial Notice**

As an initial matter, Rocket Fuel requests that the court consider ten documents outside of the complaint in conjunction with its motion to dismiss.  Dkt. 65.  Eight of these documents are referenced in the VSC.  These consist of 6 SEC filings, a transcript of an earnings call, and an article about ad fraud.  Dkt. 65 at 3.  Plaintiffs oppose this request to the extent that the documents are considered "for the truth of their contents."  Dkt. 67.

The court GRANTS Rocket Fuel's request.  Rocket Fuel establishes that eight of the documents are referenced in and relied upon by the complaint, and therefore can be considered under the incorporation by reference doctrine.  See United States v. Corinthian Colleges, 655 F.3d 984, 999 (9th Cir. 2011).  While documents can be considered for their truth on a motion to dismiss, see Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006), the court concludes that it is not necessary to do so here.  Rocket Fuel cites these documents, primarily SEC filings, merely to establish a few background facts in its motion.  Resolution of the motion to dismiss does not require that these documents be considered for the truth of the statements therein.

Rocket Fuel also urges the court take judicial notice of two documents filed in the Securities Action:  Veloso's certification as a named plaintiff, and the operative complaint in that action.  The court will take judicial notice of these two filings; plaintiffs do not object to the consideration of these two documents.

**C.      Whether the Plaintiffs Have Adequately Established Standing**

Turning to the merits, the court finds that the motion could be granted solely on the basis of the VSC's failure to plead the dates on which each plaintiff purchased Rocket Fuel stock.  The VSC alleges only that each plaintiff "has continuously held Rocket Fuel common stock since becoming a shareholder."  VSC ¶¶ 14–17.  This allegation does not establish that each "plaintiff was a shareholder or member at the time of the transaction complained of."  Fed. R. Civ. P. 23.1(b)(1); Potter v. Hughes, 546 F.3d 1051, 1056 (9th Cir. 2008) ("[Rule 23.1 requires that] the plaintiff must have owned shares in the corporation at the time of the disputed transaction.") (emphasis added).

United States District Court
Northern District of California

1    Moreover, this court has previously held that the specific dates of stock purchase

2    must be pled to establish standing under Rule 23.1.  See In re Verisign, Inc., Derivative

3    Litig., 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007) ("[P]laintiffs must unambiguously

4    indicate in any amended complaint the dates they purchased VeriSign stock, and

5    whether they have continuously owned VeriSign stock from the time of purchase up to

6    the present."); accord In re Sagent Tech., Inc., Derivative Litig., 278 F. Supp. 2d 1079,

7    1096 (N.D. Cal. 2003) ("A derivative plaintiff has no standing to sue for misconduct that

8    occurred prior to the time he became a shareholder of the corporation.") (citing Kona

9    Enterprises, Inc. v. Estate of Bishop, 179 F.3d 767, 769 (9th Cir.1999)).

10    The court will grant plaintiffs leave to amend the complaint to cure this deficiency

11    in the VSC.  Plaintiffs must plead the specific dates on which each of them purchased

12    Rocket Fuel stock to establish that each was a shareholder "at the time of the transaction

13    complained of."  Fed. R. Civ. P. 23.1(b)(1).

14    **D.    Whether Demand was Futile Because a Majority of Rocket Fuel's Directors**
      **Face a "Substantial Likelihood" of Liability**

15

16    Plaintiffs admit that they did not actually make any pre-litigation demand on Rocket

17    Fuel's Board of Directors.  Plaintiffs argue, however, that dismissal is improper because

18    demand would have been futile.  The parties agree that demand futility is assessed

19    based on the Board's composition at the time this action was filed.  See Harris, 582 A.2d

20    at 228.  Here, there were eight directors on the board at the relevant time: John, Frankel,

21    Bostrom, Codd, Ericson, Gardner, Kokish, and Zweben.  VSC ¶¶ 19–26, 30.  Two of

22    these eight—John and Frankel—were also officers of Rocket Fuel.  VSC ¶¶ 19–20.  This

23    order will refer to the other six directors—Bostrom, Codd, Ericson, Gardner, Kokish, and

24    Zweben—as the "outside directors" to distinguish them from John and Frankel.

25    With one exception discussed below, the parties agree that the Rales test applies

26    here.  Under Rales, plaintiffs bear the burden to show that at least four of the eight

27    directors are "incapable of making an impartial decision" on a litigation demand.  634

28    A.2d at 932.  When, as here, the alleged disability is based on a suit against the

7

directors, plaintiffs must show that "the potential for liability is not 'a mere threat' but instead may rise to 'a substantial likelihood.'" Id. at 936 (citing Aronson, 473 A.2d at 815).  Directors are presumed to have fulfilled their fiduciary duties, and "the burden is upon the plaintiff in the derivative action to overcome that presumption" with particularized factual allegations.  Beam v. Stewart, 845 A.2d 1040, 1048–49 (Del. 2004).

While the parties organize the VSC's claims somewhat differently, there are essentially three potential sources of a "substantial likelihood" of liability alleged by plaintiffs.  First, there is the threat of liability based on the claims remaining in the Securities Action.  Second, there are the insider selling allegations.  Finally, there are plaintiffs' generic allegations of state law breaches of fiduciary duties, including a failure of oversight, unjust enrichment, and waste.

### 1.    Liability from the Securities Action

As to the remaining claims in the Securities Action, the court finds that only John and Frankel face a substantial risk of liability.  Compare Pfeiffer v. Toll, 989 A.2d 683, 690 (Del. Ch. 2010) (excusing demand because "[a]ll of the individual defendants [are] named defendants in a companion federal securities action" that survived a motion to dismiss).  The other six directors were dismissed as defendants in the Securities Action by this court's December 23 Order.  Accordingly, the outside directors face almost no risk of liability—let alone a substantial likelihood—from that case.  "Having failed to state a claim for proxy violations or securities fraud" against these directors, "plaintiffs cannot use those causes of action as a basis for alleging demand futility."  In re Verisign, Inc., Derivative Litig., 531 F. Supp. 2d 1173, 1192 (N.D. Cal. 2007); see also In re Yahoo! Inc. S'holder Derivative Litig., No. 11-cv-3269-CRB, 2015 U.S. Dist. LEXIS 171909, at *21– *23 (N.D. Cal. Dec. 23, 2015) (statements that the court found not to be materially misleading cannot be used excuse demand); Guttman v. Huang, 823 A.2d 492, 504 (Del. Ch. 2003) (demand not excused when "none of these five defendants is even named as a defendant in the pending federal securities suits.").  Thus, the risk of liability from the Securities Action only disables two of the eight directors.

1    At oral argument, plaintiffs' counsel pointed to paragraph 49 of the VSC as a "new"

2 misleading statement that the court had not considered in its December 23 Order.

3 Allegedly made at the "IPO roadshow" on September 20, 2013, the statement is that

4 Rocket Fuel's technology would "block bad sites and pages before we ever serve a single

5 ad on them."  VSC ¶ 49.  In fact, the court did analyze this statement in its December 23

6 Order, finding that "the statement does not relate to bot views" but instead

7 "claims that Rocket Fuel's clients' ads will not be served on 'bad sites and pages,' such

8 as pornographic or hate-speech pages.  In other words, the statement relates to the

9 process for selecting pages on which ads are served, rather than the process for blocking

10 bot views."  December 23 Order at 13–14.  This statement, like the others addressed at

11 length in the December 23 Order, does not create a substantial likelihood of liability such

12 that the outside directors could not disinterestedly consider a demand.

13    In sum, because only the November 2013 blog post remains in the Securities

14 Action, and the outside directors have been dismissed entirely as defendants in that

15 case, the allegedly misleading statements cited in the VSC do not excuse the demand

16 requirement under Rales.

17    **2.    Liability Based on "Insider Selling" Allegations**

18    The next potential basis for excusing demand is the insider selling allegations.

19 VSC ¶¶ 205–217.  These claims are made against five of the eight Demand Directors:

20 John, Frankel, Ericson, Gardner, and Zweben.  The VSC alleges that these defendants

21 sold Rocket Fuel common stock during the secondary public offering based on material,

22 non-public information.  VSC ¶¶ 61–65, 205–217.

23    Plaintiffs argue that the Aronson test, and not the Rales test, applies to their

24 insider trading allegations because it challenges a particular decision of the Board: the

25 decision to allow a secondary offering during which the shares were sold.  The court finds

26 that the particular test is not determinative in this case, because plaintiffs have not

27 established, by means of particularized factual allegations, that a majority of the Demand

28 ///

9

1    Directors was interested or lacking in independence.  Thus, the VSC's insider selling

2    allegations satisfy neither the <u>Rales</u> test nor the first prong of the <u>Aronson</u> test.

3    　　　The VSC lacks particularized allegations of insider trading that create a substantial

4    likelihood of liability.  Rather, the VSC generally alleges, without any specific factual

5    basis, that all of the "Insider Selling Defendants"—as an <u>undifferentiated group</u>—had or

6    should have had knowledge that Rocket Fuel's technology was not as effective at

7    stopping ad fraud as it was perceived to be.  The VSC does not allege <u>specific</u> facts as to

8    what <u>particular</u> material information any individual defendant knew, or when and how he

9    or she knew it.  The VSC does not allege that the Board ever discussed bot fraud or the

10   effectiveness of Rocket Fuel's technology in combatting bot fraud, or that any individual

11   director knew about or authorized any particular allegedly misleading statement.  Instead,

12   the VSC repeats variations on the same general boilerplate allegation that <u>all</u> of the

13   individual defendants either "knew or were reckless in not knowing" that the company's

14   bot fraud prevention technology was not as effective as claimed in the "false and

15   misleading statements."  VSC ¶¶ 92, 96, 99, 102, 107, 110, 112, 115, 117, 151.

16   　　　<u>Guttman v. Huang</u>, 823 A.2d 492 (Del. Ch. 2003), is instructive on this point.  In

17   <u>Guttman</u>, as here, plaintiffs alleged that officers and directors "sold stock at a time when

18   they knew material, non-public information."  <u>Id.</u> at 493.  <u>Guttman</u> held that mere sales of

19   stock by directors, without particularized allegations, did not excuse demand:

20   　　　　　As a matter of course, corporate insiders sell company stock
　　　　　　　　and such sales, in themselves, are not quite as suspect as a
21   　　　　　self-dealing transaction . . . .

22   　　　　　[I]t is unwise to formulate a common law rule that makes a
　　　　　　　　director "interested" whenever a derivative plaintiff cursorily
23   　　　　　alleges that he made sales of company stock in the market at
　　　　　　　　a time when he possessed material, non-public information.
24   　　　　　This would create the same hair-trigger demand excusal that
　　　　　　　　<u>Aronson</u> and <u>Rales</u> eschewed.  The balanced approach that is
25   　　　　　more in keeping with the spirit of those important cases is to
　　　　　　　　focus the impartiality analysis on whether the plaintiffs have
26   　　　　　pled particularized facts regarding the directors that create a
　　　　　　　　sufficient likelihood of personal liability because they have
27   　　　　　engaged in material trading activity at a time when (one can

28

1    infer from particularized pled facts that) they knew material,
2    non-public information about the company's financial
     condition.

3    Id. at 502.  As in Guttman, the VSC does not contain particularized allegations about the

4    specific information that any individual director knew at any given time.

5         Plaintiffs' argument that the directors would necessarily know of Rocket Fuel's

6    "core operations" misses the mark.  First, the case that plaintiffs rely upon, Pfeiffer v. Toll,

7    989 A.2d 683 (Del. Ch. 2010), only discusses the "core operations" doctrine in the

8    context of a 12(b)(6) motion to dismiss, after it had found that demand utility was

9    established.  Id. at 690.  The case makes clear that this aspect of the decision was

10   decided "under the plaintiff-friendly Rule 12(b)(6) standard," and not a "heightened

11   pleading standard."  Id. at 692.  Accordingly, other courts have held that the "core

12   operations" presumption has no place in assessing demand futility.  See In re Yahoo!,

13   2015 WL 9319307 at *9 n.10 ("[The core operations] doctrine has no application in

14   derivative litigation.").

15        Even presuming that the "core operations" doctrine could apply in the demand-

16   futility analysis, the VSC does not contain sufficient particularized facts to support the

17   inference that the allegedly misleading statements about combatting bot fraud were part

18   of Rocket Fuel's "core operations."  It is hardly clear from the VSC that combatting ad

19   fraud is the "core" of Rocket Fuel's business; rather, it is one feature of Rocket Fuel's

20   automated ad-buying technology.  VSC ¶¶ 2, 35–36.  Without more, the court cannot

21   infer that the outside directors should or would have had detailed knowledge of the

22   technical effectiveness of this one feature of the company's product.  Moreover, there are

23   no specific factual allegations that any outside director was aware of the allegedly

24   misleading post on the company's marketing blog.

25        For these reasons, the court finds that the insider trading allegations in the VSC,

26   as pled, do not create a substantial risk of liability, at least as to the six outside directors.

27   ///

28   ///

### 3.    Liability Based on State Law Fiduciary Duties

The final basis for liability excusing demand are plaintiffs' state law claims for breaches of fiduciary duty, unjust enrichment, and corporate waste.  These claims are generally pled in the VSC, which nowhere makes clear <u>which</u> particular fiduciary duties were breached by <u>which</u> individual directors, when, and how.  VSC ¶¶ 187–204. Although one of the claims makes a brief reference to "excessive compensation," VSC ¶ 201, these state law claims appear to derive from the same basic allegations discussed above: (1) that the defendants "caus[ed] the Company to issue false and misleading statements," VSC ¶ 44; <u>see also</u> ¶¶ 190, 200; and (2) "were unjustly enriched" by "insider sales they received while breaching their fiduciary duties."  VSC ¶ 195; <u>see also</u> ¶ 201. As before, these allegations are made against all defendants as a group.  Without more specific factual allegations, the court is unable to assess whether there is a substantial likelihood of liability for any individual Demand Director arising from these claims.

Plaintiffs' opposition brief offers three potential theories with regard to the state law claims: (1) a breach of the "duty of candor"; (2) a breach of the "duty of loyalty" by the Broad's "failure to monitor" Rocket Fuel's actions; and (3) general assertions of "unjust enrichment and waste."  <u>See</u> Dkt. 66 ("Opp'n") at i.  Although these theories were not specifically pled in the complaint, the court will address each of them briefly so that the plaintiffs are on notice of the standards that will apply to any amended complaint.

Plaintiffs' "duty of candor" theory is based on the directors' alleged role in "causing or allowing the misstatements in the website posting" of November 2013.  Opp'n at 8. This theory relies on the "core operations" presumption to impute knowledge of the allegedly-misleading blog post to all of the directors.  As discussed above, even assuming the "core operations" doctrine could apply, the VSC has not established that a post on the company's marketing blog about ad fraud is a "core operation."  As to the other statements in the VSC, violations of the duty of candor cannot be based on statements that this court has already found not to be misleading in its December 23 Order.

United States District Court
Northern District of California

1    Plaintiffs' claims based on an alleged "failure to monitor" appear to assert what is

2   commonly known as is a "Caremark claim."  See In re Caremark Int'l Inc. Derivative Litig.,

3   698 A.2d 959, 967 (Del. Ch. 1996) ("The claim is that the directors allowed a situation to

4   develop and continue which exposed the corporation to enormous legal liability and that

5   in so doing they violated a duty to be active monitors of corporate performance.").  This

6   type of claim is "possibly the most difficult theory in corporation law," id., and courts

7   assessing demand futility on this basis typically require the plaintiff to describe "red flags"

8   that would have put the directors on notice of the wrongdoing.  See, e.g., Guttman, 823

9   A.2d at 507.

10    The red flags cited by plaintiffs in the briefing— the directors' alleged "close

11   monitoring" of bot traffic, and that some of Rocket Fuel's customers decided to advertise

12   in-house, Opp'n at 15—do not rise to the level that courts have found sufficient to put

13   directors on notice.  "Under Delaware law, red flags 'are only useful when they are either

14   waved in one's face or displayed so that they are visible to the careful observer.'"  Wood

15   v. Baum, 953 A.2d 136, 143 (Del. 2008) (citations omitted).  The cases that plaintiffs cite

16   involve egregious facts and substantive notice of wrongdoing, such as "repeated FDA

17   warning letter[s]" over a series of years.  See Rosenbloom v. Pyott, 765 F.3d 1137, 1146

18   (9th Cir. 2014); see also In re Abbott Labs. Derivative S'holders Litig., 325 F.3d 795, 809

19   (7th Cir. 2003) (involving "six years of [FDA] noncompliance, inspections, 483s, Warning

20   Letters, and notice in the press").  The VSC does not allege any comparable red flags.

21    As to plaintiffs' third theory, there are no particularized allegations in the VSC

22   about corporate waste or unjust enrichment that create a substantial likelihood of liability.

23   As pled, the unjust enrichment claim is premised on the "proceeds from insider sales"

24   that the directors received.  VSC ¶ 195.  Similarly, the corporate waste claims derive from

25   "self-interested stock options" and "millions of dollars of legal liability" from the Securities

26   Action.  VSC ¶ 201.  To the extent that these claims are premised on liability from the

27   Securities Actions and the insider selling allegations, demand is not excused for the

28   reasons explained above.  Finally, although the corporate waste claim briefly alleges

13

1    "excessive compensation," VSC ¶ 201, there are no particularized facts in the VSC

2    alleging that compensation for any outside director was unreasonable.

3           Thus, as pled, the VSC has not established that demand was futile on the basis

4    of the state law/fiduciary duty claims.

5                                    **CONCLUSION**

6           In summary, the allegations in the VSC failed to establish that the plaintiffs have

7    standing as shareholders at the time of the disputed transactions.  Moreover, the

8    allegations in the VSC only show that, at most, two of the eight directors (John and

9    Frankel) face a risk of liability such that they could not have been impartial in considering

10   a pre-litigation demand.  Therefore, plaintiffs have not established that demand was futile

11   under <u>Rales</u> and <u>Aronson</u>, and the complaint must be dismissed for failure to comply with

12   Federal Rule of Civil Procedure 23.1.  However, the court will provide plaintiffs leave to

13   amend the complaint to: (1) plead the specific dates on which each plaintiff purchased

14   stock; and (2) allege sufficient particularized facts showing that a majority of the Demand

15   Directors were interested or faced a substantial likelihood of liability such that demand

16   would have been futile.

17          For the foregoing reasons, Rocket Fuel's motion to dismiss (Dkt. 64) is

18   GRANTED.  Rocket Fuel's request for judicial notice filed in conjunction with its motion

19   (Dkt. 65) is also GRANTED.  As explained at the hearing, plaintiffs have until **September**

20   **21** to amend the complaint with the <u>particularized</u> allegations required by Rule 23.1.  No

21   new or additional claims may be added without leave of court or the consent of the

22   defendants.  Defendants will have 28 days after the amended complaint is filed in which

23   to respond.

24          **IT IS SO ORDERED.**

25   Dated:  August 26, 2016

26

27                                    _____

28                                    PHYLLIS J. HAMILTON
                                      United States District Judge

United States District Court
Northern District of California